COLLETT v. QUANAH, A. & P. RY. CO.
(No. 912.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 2, 1916. Rehearing Denied March 1, 1916.)

SUBSCRIPTIONS  ⊂⊃15(4)—PERFORMANCE—ESTOPPEL.

Plaintiff executed a note to a railway company for $420 as a subscription to induce the extension of the railroad. The subscriptions were based upon the acreage of land owned by the subscribers at $1 an acre. Plaintiff and his brother were equally interested in certain land, and it was plaintiff's claim that his note was not to be binding until his brother signed it. The brother subsequently executed a note for $200 to a member of the right of way committee, and subsequently plaintiff told such member that he had already signed a note for the full amount of the subscription, and did not think the company should have both notes. Thereafter the member of the committee sent plaintiff the brother's note for the $200, and plaintiff retained such note. Plaintiff had acquired his brother's interest in the land. *Held* that, in a suit by plaintiff for the cancellation of his note, judgment was properly rendered for defendant in the absence of any tender or offer to return the $200 note to the railway company, though plaintiff testified that his brother was insolvent, as he must have known there was some intended surrender of some right, and must have retained the note in pursuance of the conversation with the member of the committee.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. § 17; Dec. Dig. ⊂⊃15(4); Railroads, Cent. Dig. §§ 80–86.]

Appeal from Motley County Court; C. B. Whitten, Judge.

Action by F. F. Collett against the Quanah, Acme & Pacific Railway Company. Judg-

ment for defendant, and plaintiff appeals. Affirmed.

T. T. Bouldin, of Matador, for appellant. D. E. Decker, of Quanah, and G. E. Hamilton, of Matador, for appellee.

HENDRICKS, J. The appellant, Collett, sued the Quanah, Acme & Pacific Railway Company for the purpose of canceling a note for the amount of $420, executed as a subscription note to said railway company in consideration of the proposed and consummated extension of said railroad to Roaring Springs, Tex. Plaintiff alleged that this bonus note was executed with the understanding that his brother, J. H. Collett, was also to sign the same, and that the note, until signed by his brother, was not to be a binding obligation against him, and on account of the nonexecution of same by his brother, J. H. Collett, the instrument was void.

The defendant railway company, among other things, pleaded:

"That after the execution by plaintiff of the note herein sued on for $420 plaintiff's brother, * * * J. H. Collett, executed and delivered to one J. W. Chalk, payable to this defendant, his promissory note for the sum of $200, in consideration that defendant would construct its line of railway to Roaring Springs; * * * that said $200 note was delivered to said J. W. Chalk, who was a member of said right of way committee for said railway, to raise the bonus. * * *"

It was further alleged in defendant's answer:

"That after the execution and delivery of said note to said Chalk by J. H. Collett this plaintiff informed Chalk that he (plaintiff) had already given a bonus note for the sum of $420, which was at the rate of $1 per acre for all the land owned by plaintiff and J. H. Collett, and stated that, if said $200 note were delivered to defendant, the two notes together would amount to $200 more than $1 per acre, and therefore asked said Chalk to give him (plaintiff) said $200 note, and that he would pay the $420 note, and J. H. Collett could pay him (plaintiff), the $200 note, and that in response to said request * * * said Chalk did turn over to plaintiff said $200 note."

Chalk testified:

"Some time after we signed up the bonus contract J. H. Collett was in my store at Matador, and I got him to sign this $200 note. Some time after J. H. Collett had signed this note F. F. Collett (meaning the plaintiff) was talking to me about this note, and told me that he had already signed a note for him and J. H. Collett for the full amount, and that he did not think they ought to have to pay both notes. After this I sent the $200 note to F. F. Collett."

The Colletts owned equal undivided interests in the land, and the bonus notes were based upon the acreage of the land owned by the subscribers at $1 per acre.

The record shows that the plaintiff, according to his own testimony, subsequent to his execution of the $420 note, and acquired, without consideration, his brother's half interest in the land, upon which, according to the acreage of each, the bonus notes for each amount was executed by the two brothers.

Plaintiff also said the J. H. Collett note was handed to him by his father, and he turned it over to an attorney immediately after receiving it. At the time his father delivered the note he said no reason was given "why J. W. Chalk handed me the $200 note."

There is no denial, however, whatever of the conversation testified to by Chalk with plaintiff in reference to the subscription contract and the two notes. Plaintiff must have known that there was an intended surrender of some right in regard to the transaction, in pursuance of the conversation between the two men, when Chalk of the right of way committee sent him the note, and his retention of the note must have been in pursuance of the conversation.

The railroad company pleads a ratification and estoppel on account of these matters. This $200 note executed by J. H. Collett as a bonus to the railway company has never been tendered to said company, nor even offered to be tendered in the pleadings. The pleadings of defendant disclose to the plaintiff that he had such a note in his possession, delivered to him, in pursuance of the conversation referred to and as an evidence of the surrender of some right.

The plaintiff not having even tendered or offered to return this $200 note to the railway company, notwithstanding plaintiff testified his brother was insolvent, upon such consideration we think the judgment of the trial court should be affirmed, and that, as presented, no other judgment in reality should have been rendered. The other assignments are immaterial in this view of the case.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.